**Donald P. DeFRANCESCO, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellee.**

No. 88–1810.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1989.

Decided Feb. 8, 1989.

Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, Ill., for plaintiff-appellant.

Barbara M. King, Asst. U.S. Atty. and Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER and MANION, Circuit Judges.

POSNER, Circuit Judge.

The district court upheld the Social Security Administration's denial of Donald DeFrancesco's claim for disability benefits. 679 F.Supp. 785 (N.D.Ill.1988). The appeal requires us to decide whether the administrative law judge was justified in finding that DeFrancesco is not totally disabled.

In 1986, when the disability hearing was held, DeFrancesco (who has a high school education) was 50 years old, 6 feet tall, and 200 pounds in weight. He had been a truck driver until quitting work in 1984. In 1970 and 1974 he had suffered heart attacks caused by coronary artery disease, and later he experienced an episode of congestive heart failure. Between his two heart attacks he developed diabetes, for which he takes insulin, but his diabetes is not well controlled and the level of sugar in his blood is very high. He has two common complications of diabetes: "peripheral neuropathy," which has produced diminished sensation in his feet, and "intermittent claudication"—pain in his legs due to a diminished supply of blood to them.

The witnesses at the hearing were DeFrancesco, his son, and Dr. Abramson, retained by the Social Security Administration as its medical advisor for the case (see 20 C.F.R. § 404.1526(c)). Abramson had not examined DeFrancesco, but he had read the reports of doctors who had; he had read DeFrancesco's hospital records; and he asked DeFrancesco questions at the hearing. DeFrancesco was represented by counsel, and there was no opposing counsel; social security disability hearings ordinarily are not adversarial.

DeFrancesco (backed up by his son) testified that he cannot lift an object that weighs more than 30 pounds, that even slight exertion causes him to have chest pains, that he cannot walk more than a block without having to stop until the pains abate and the numbness in his feet diminishes, that he gets frequent cramps in his legs, that he cannot stand for more than ten or fifteen minutes at a time, that he has slight numbness in his hands and arms, and that because of the numbness in his feet he cannot drive more than 17 miles at

a stretch. Sometimes while driving he mixes up the brake and the gas pedal; and sometimes while walking or standing he loses his balance, although he has never fallen. Dr. Abramson was skeptical about the chest pains. He pointed out that while the type of pain described by DeFrancesco was consistent with DeFrancesco's history of coronary artery disease, the reports of examining doctors did not mention complaints about chest pains and the doctors had not prescribed nitroglycerin or any other treatment for pain due to coronary artery disease. Abramson acknowledged, however, that DeFrancesco *has* coronary artery disease, as well as uncontrolled diabetes with peripheral neuropathy and intermittent claudication, and that his coronary artery disease prevents DeFrancesco from doing "medium work," which the social security regulations define as work that requires lifting up to 50 pounds.

Some medical conditions, including severe manifestations of coronary artery disease and of diabetes, are deemed disabling per se. See 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 4.00(e), 9.08. But since Dr. Abramson's uncontested testimony was that DeFrancesco's heart disease and diabetes fell short, it became necessary to consider DeFrancesco's residual capacity for work. The administrative law judge asked Abramson whether DeFrancesco could perform "a job that require[s] a good deal of walking or standing or even if it involved sitting most of the time would require some pushing and pulling of arm or leg controls." Abramson replied: "I think he could do that. He has no difficulty sitting and no real difficulty standing and he [could] sit/walk this one block and stop and repeat that. There's no objection to that. And his arms he has not complained of other than saying that his hands are somewhat numb. But he hasn't mentioned that he drops things with his hands or anything like that." When asked whether DeFrancesco could stand or walk for six hours out of an eight-hour workday, day in and day out, Abramson answered: "I don't see why he couldn't no.... [I]f he has intermittent claudication it occurs after a block or so and he is able to stop and get

rid of it. And as far as the neuropathy is concerned I don't see that would interfere as long he doesn't fall. And he says he has not fallen." When asked, "What about stopping and resting after walking a block?," Abramson replied, "Well he might get more tired than someone who is normal ... [but] peripheral neuropathy is not untowardly affected by sitting or standing if the person can do it. In other words if he doesn't know where his feet are then he can't stand.... [H]e says he does know where his feet are or he would have been falling. He could never walk a block if he didn't know where his feet were."

Under the Medical–Vocational Guidelines (the "grid") that the Social Security Administration uses in cases such as these to determine whether a claimant for disability benefits is totally disabled from working (benefits are not available under the statute for a person who is only partially disabled), a person of DeFrancesco's relatively advanced age, limited educational background, and semi-skilled work experience is deemed totally disabled if he is unable to do "light work." See 20 C.F.R. pt. 404, subpt. P, App. 2, § 201.00(g). A younger, better-educated person whose former work had required greater skill would not be deemed totally disabled if he retained the physical ability to do sedentary work, but the grid recognizes that sedentary work is not a realistic option for someone of DeFrancesco's age and background. Light work requires greater movement and exertion than sedentary work (although less than medium work). To be deemed capable of doing light work a claimant must be able to lift up to 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds; and he must be able either to walk or stand for substantial periods of time or to sit for substantial periods with some pushing and pulling of arm or leg controls that require greater exertion than would be necessary in a sedentary job. 20 C.F.R. § 404.1567(b). "Even though the weight lifted in a particular light job, may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sed-

entary and most light jobs.... Relatively few unskilled light jobs are performed in a seated position.... [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.... Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects...." Soc. Sec. Ruling 83–10. If DeFrancesco can do light work within the meaning of the regulation and explanatory ruling, then under the grid he is not disabled.

The administrative law judge credited Dr. Abramson's testimony fully but found DeFrancesco "less than fully credible." He noted DeFrancesco's own testimony that one of his doctors had urged him to find work and DeFrancesco's acknowledgment that he helps his wife do the dishes and drives her to work (that's the 17–mile trip—DeFrancesco's limit) and to the store. Abramson had testified "that although the claimant could perform light work, he would not be able to operate foot controls at the same ability as an unimpaired individual. Therefore, the Administrative Law Judge finds that the claimant has [sic] can perform light work, which [sic] the range slightly reduced by his foot problem. However, the degree of interference found is very slight since the claimant does have the ability to drive a car."

■ The social security disability claimant who tries to overturn an administrative law judge's finding that the claimant is not totally disabled faces an uphill fight. The administrative law judge is entitled to resolve conflicts in oral testimony against the claimant, *Arbogast v. Bowen*, 860 F.2d 1400, 1406–07 (7th Cir.1988), and to give substantial weight to the testimony of a medical advisor even though the advisor has not examined the claimant personally, *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982). The deck is not entirely stacked against the claimant. A number of decisions greatly discount the report of a nonexamining physician in favor of the report of the claimant's own physician, see,

e.g., *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *Millner v. Schweiker*, 725 F.2d 243, 245–46 (4th Cir.1984), and one decision even asks whether testimony by the medical advisor on whether the claimant is disabled "may not usurp" the role of the administrative law judge, see *Wier v. Heckler*, 734 F.2d 955, 964 n. 8 (3d Cir.1984). *Wier* can be criticized for placing excessive emphasis on the technicalities of evidence law in a nonadversarial administrative setting; the other decisions, for neglecting the well-known propensity of personal physicians to go the extra step in helping their patients obtain benefits for a medical condition—whether benefits in the form of sick leave, reimbursement of medical fees by an insurer, or, as here, government benefits. See *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985); *Garrison v. Heckler*, 765 F.2d 710, 712–13 (7th Cir.1985); *Cummins v. Schweiker, supra*, 670 F.2d at 84. (On this ground, *Stephens* and *Garrison* read our earlier decisions in *Allen* and *Whitney* narrowly.) The physician retained by the Social Security Administration (Dr. Abramson in this case) may have an equal and opposite propensity. But that is not a good reason to presume, in the event of conflicting evidence, that the patient's own physician is *more* reliable than the medical advisor.

■ Because the statute requires that the claimant's disability be total, many persons with serious health problems that would make working extremely uncomfortable and finding a job extremely difficult (employers don't like unhealthy workers) are denied disability benefits. The fact that DeFrancesco has serious health problems is therefore not decisive. At the same time, the social security disability program contains only a limited notion of contributory fault. If the claimant has inexcusably refused to follow prescribed medical treatment that would eliminate his total disability, then he isn't totally disabled. See 20 C.F.R. § 416.930(b); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988). But that is not argued here; and it is

irrelevant that DeFrancesco has merely been remiss in dealing with his diseases. Lack of discipline, character, or fortitude is not a defense to a claim for disability benefits. See *Stone v. Harris*, 657 F.2d 210 (8th Cir.1981); *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir.1984). DeFrancesco is overweight—something extremely undesirable for a diabetic to be—and he does not see a doctor regularly; the fact that his diabetes is uncontrolled despite his taking insulin suggests he requires medical supervision. On the other hand he testified that he has difficulty finding the money for medical treatment. Compare *id.* at 713–14; *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir.1985). We shall step outside our judicial role for a moment and express our concern and hope that Mr. DeFrancesco will pay more attention to his health problems, which are debilitating as well as life threatening.

Despite the obstacles to a successful challenge to a denial of social security disability benefits, DeFrancesco has persuaded us that this case should be remanded to the agency. The administrative law judge's opinion contains a serious logical error and is also inconsistent both with Dr. Abramson's testimony, which the administrative law judge purported to credit fully, and with the Social Security Administration's guidelines for adjudicating disability cases. The three errors turn out to be related. The logical error is in inferring from the fact that DeFrancesco drives a car that his ability to use foot controls is only slightly impaired. Many people drive cars who shouldn't and DeFrancesco may be one of them. He testified—and the administrative law judge nowhere expressed skepticism about *this* testimony— that he drives with difficulty and occasionally mixes up the brake and gas pedals because of the diminished sensation in his feet. When at argument the government's lawyer emphasized "occasionally" she injected a note of black humor into the proceeding. No responsible employer would hire a person to drive a delivery van or do other work involving the use of foot controls if the person had numb feet and as a result "occasionally" mixed up the brake and the gas pedal. The liability implications for the employer if the employee injured someone in an accident would be staggering. DeFrancesco is totally disabled from any light work involving the use of foot controls—especially when we consider that the social security ruling quoted earlier states that the foot controls involved in light work require more strength than sedentary work and gives as examples of light jobs involving strenuous foot controls "mattress sewing machine operator, motor-grader operator, and road-roller operator." DeFrancesco could not perform such jobs with his numb feet.

Under the regulation defining light work, DeFrancesco's inability to operate foot controls does not make him incapable of doing light work, provided he can walk or stand for six hours out of an eight-hour workday. Dr. Abramson testified that he could, and the administrative law judge agreed. But Abramson was answering a theoretical question about DeFrancesco's physical capacity rather than a practical question about his ability to do a job that requires walking or standing for six hours a day, every day. DeFrancesco can walk only a block or so without having to stop. It takes only one to three minutes for a normal person to walk a block (depending on its length), but let us suppose that DeFrancesco could walk for five minutes before he had to rest for a minute or two before continuing. He said he could stand for no more than ten or fifteen minutes. (It seems plausible that he could indeed stand for a longer time than he could walk, but this question was not explored at the hearing.) If DeFrancesco were working on an assembly line, would his boss let him sit down every five or ten minutes? That seems unlikely. But, more important, Dr. Abramson conceded that DeFrancesco would tire more rapidly than a healthy person, even if he did interrupt his standing or walking every few minutes. Assembly-line work, waiting on tables, and other jobs requiring continuous standing or standing plus walking are relatively strenuous. One doubts that DeFrancesco could carry on, day after day, in this condition.

Dr. Abramson was not asked to focus on this essential question.

DeFrancesco has the physical capacity to do sedentary work, but that is immaterial given his age, education, and work experience. And he has the physical capacity to do *some* light jobs. But he cannot perform anything like the full range of light jobs. Another ruling by the Social Security Administration addresses this situation. "Where an individual's exertional RFC [residual functional capacity—i.e., his ability to work] does not coincide with the definition of any one of the ranges of work as defined in ... the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability.... In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base." Soc. Sec. Ruling 83–12. The administrative law judge tried to squeeze this case into the latter category by deeming the restriction on DeFrancesco's ability to perform the range of light jobs slight. But this conclusion just does not jibe with the evidence. This is not a case like *Fox v. Heckler*, 776 F.2d 738, 743 (7th Cir.1985), where it could be said that the claimant could perform the majority of light jobs.

The ruling goes on to say that "where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource" (this means a vocational counselor or specialist —people are things in bureaucratese). That is this case. Cf. *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir.1987). The administrative law judge should have invited the testimony of a vocational counselor, who would, as the ruling goes on to explain, "advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." The administrative law judge did not do this.

The grid has simplified the determination of social security disability claims and brought about a modicum of uniformity in the adjudications of almost a thousand administrative law judges. But it has the characteristic flaws of mechanical rules, and one of them is that it abounds in gaps. DeFrancesco is neither capable of doing light work nor incapable; he is capable of doing some light jobs but not others. The Social Security Administration could, in the spirit of the grid, have used some mechanical decision formula to plug the gap. Instead it has advised its administrative law judges to get off their grids and hear testimony by a vocational specialist concerning whether there are enough jobs that *this* claimant can *actually* do to warrant a conclusion that his medical condition is not totally disabling. This is a civilized method of resolving borderline cases, cf. Diver, *The Optimal Precision of Administrative Rules*, 93 Yale L.J. 65, 88–92 (1983); see generally Mashaw, Bureaucratic Justice: Managing Social Security Disability Claims 116–23 (1983), and in any event the method the responsible agency has directed its adjudicators to use. This administrative law judge failed to use it, either because of his belief—untenable given the record—that DeFrancesco's medical condition impaired his ability to perform light work but slightly, or because the administrative law judge confused a medical advisor with a vocational specialist.

The case must be remanded to the Social Security Administration for a further hearing at which a vocational specialist will testify.

REVERSED AND REMANDED WITH DIRECTIONS.