In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3187

MIKE BUTLER,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-cv-00401-DRL-JPK — **Damon R. Leichty,** *Judge.*

ARGUED MAY 26, 2021 — DECIDED JULY 14, 2021

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

ROVNER, *Circuit Judge.* Mike Butler sought disability insur-
ance benefits under Title II of the Social Security Act, 42 U.S.C.
§§ 401–433, and that claim for benefits was denied by the Ad-
ministrative Law Judge (ALJ) following a hearing. The Ap-
peals Council declined to review the denial, and therefore the
decision of the ALJ is the final decision for purposes of our

review. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2010); 20 C.F.R. §§ 404.955, 404.981. Butler now challenges the ALJ's determination that he was capable of doing light work with some restrictions, and that a sufficient number of such jobs existed that he could perform. The relevant time period at issue is from the alleged date of disability, November 4, 2015, through the ALJ's decision on April 19, 2018.

We review de novo the district court's affirmance of the ALJ's decision and review directly the decision of the ALJ. *Id*. The ALJ's decision will be affirmed if it was supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*., quoting *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Id*., quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

Eligibility for disability benefits is determined by applying a five-step analysis, in which "[t]he ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. The sole issue in this case concerns the application of Step 5 of the disability benefits analysis, and at that stage of the analysis, the burden shifts to

the Commissioner to prove that the claimant can perform other work in the economy. *Id*. at 352. As for the other steps of the test, it is undisputed: (1) that he worked in the past as a millwright and machine repair maintenance worker, and that he stopped working and argued that he became disabled as of November 4, 2015; (2) that his claim of disability is based on severe impairments stemming from a stroke, seizures, and heart disease; (3) that those impairments do not meet the listings and therefore do not render him conclusively disabled; and (4) that he is unable to perform his prior occupation.

That leads us to step 5, which requires consideration of whether the claimant is unable to perform any other work in the national economy given his age, education, and work experience. The ALJ held that the evidence established that in addition to his exertional limitations, Butler has some nonexertional impairments that placed additional limits on his ability to perform light work. Accordingly, rather than rely solely on Medical Vocational Guidelines ("the grids") for determining disability, the ALJ heard testimony from a vocational expert ("VE") as to the availability of jobs that Butler could perform in light of those additional nonexertional limits. Specifically, the ALJ asked the VE to assume a hypothetical individual who was 51 years old and therefore closely approaching advanced age under the regulations, and had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except that he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can have only occasional exposure to pulmonary irritants such

as fumes, odors, dusts, gases, and poor ventila-
tion; can never work around humidity or tem-
perature extremes; can never work around haz-
ards such as unprotected heights or moving ma-
chinery; can occasionally operate foot controls
with the left lower extremity; can occasionally
reach in all directions with the left upper ex-
tremity; and can occasionally grip, handle, and
finger with the left upper extremity.

ALJ Decision at 4, App. 18. Assuming those limitations and
characteristics, the VE identified three unskilled light work
occupations that Butler could still perform, namely: furniture
rental consultant, Dictionary of Occupational Titles ("DOT")
295.357-018, with about 44,000 jobs in the nation; usher, DOT
344.677-014, with about 26,000 jobs in the nation; and infor-
mation clerk, DOT 237.367-108, with about 66,000 jobs nation-
wide. *Id*. at 25. The VE subsequently also testified as to the
number of those jobs in Butler's state of Indiana, finding 3,050
jobs in those occupations. That total included 550 furniture
rental consultant, 1,200 usher, and 1,300 information clerk po-
sitions.

On appeal, Butler argues that the ALJ failed to properly
apply the grids in denying benefits. He alleges that in deter-
mining that Butler could perform three occupations with
136,000 jobs, the ALJ failed to consider that Butler had the ad-
ditional adverse vocational factor of being a person closely
approaching advanced age, in that he was between the ages
of 50–54. But that argument is belied by the record. The ALJ
quite clearly recognized that Butler was in the category of per-
sons closely approaching advanced age, and in eliciting the
testimony from the VE as to jobs that Butler could perform,

the ALJ incorporated Butler's age as one of the characteristics to be considered in making that determination, asking the VE "whether jobs exist in the national economy **for an individual with the claimant's age,** education, work experience, and residual functional capacity." ALJ Decision at 11, App. 25.

Butler also complains that the limitations to only occasional reaching, handling, and fingering with the left upper extremity would likely eliminate nearly all unskilled sedentary work, and reduce the unskilled light occupational base by at least two-thirds, and argues that the ALJ improperly cut off cross examination as to how much more the light occupational base would be eroded. He argues that the ALJ should have found him disabled based on application of the grids given the erosion of the number of jobs he could perform in the light occupational base and the inability to perform jobs at the sedentary occupational base. He further contends that the ALJ failed to address that Butler would be approved for disability even if capable of performing the full range of sedentary unskilled work. But those arguments are unavailing because the ALJ followed the procedures that are appropriate to a case such as this one in which exertional and nonexertional impairments impede the claimant's ability to perform some jobs within a category. Those arguments by Butler fail to undermine that analysis and do not relate to the issue ultimately before the ALJ.

A case relied upon by Butler for his arguments, *DeFrancesco v. Bowen*, 867 F.2d 1040 (7th Cir. 1989), is illustrative—and actually supports the ALJ's decision in this case. In *DeFrancesco*, the applicant could perform sedentary work, but that was immaterial given his age, education and work experience. *Id*. at 1045. Accordingly, the relevant question was

whether he was able to perform light work. As to that level of work, he had the physical capacity to perform some, but not all, light jobs, and thus was "neither capable of doing light work nor incapable." *Id*. We held that in such circumstances "[t]he Social Security Administration could, in the spirit of the grid, have used some mechanical decision formula to plug the gap. Instead it has advised its administrative law judges to get off their grids and hear testimony by a vocational specialist concerning whether there are enough jobs that *this* claimant can *actually* do to warrant a conclusion that his medical condition is not totally disabling." (emphasis in original) *Id*. Because the ALJ did not consult a vocational expert for that assessment, we remanded the case in *DeFrancesco*.

Butler similarly has limitations which precluded a determination that he could either perform all light work or perform none. Unlike in *DeFrancesco*, the ALJ here consulted a vocational expert to obtain an assessment. The ALJ thus followed the procedure that was lacking in *DeFrancesco*, consulting with a vocational expert and denying benefits only after that expert identified light work jobs that Butler could perform, which existed in sufficient numbers to conclude that Butler's condition was not medically disabling.

Therefore, our reasoning in *DeFrancesco* supports rather than undermines the decision of the ALJ in this case. Along the same lines, in numerous other cases we have upheld the resort to vocational experts in cases involving both exertional and nonexertional limitations, as are present here, because the grids do not reflect nonexertional limitations. For instance, in *Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir. 2005), we recognized that the grids were designed for cases involving exertional or strength limitations. Where nonexertional

impairments—such as limitations as to climbing, balancing, stooping, kneeling, crouching, or work environment—are present as well, we held that the ALJ first must determine whether the claimant can be found disabled based solely on the exertional limitations. *Id*. at 628–29. Where that is not a possibility, we recognized that the ALJ should use the grids as a framework, but should consult with a vocational expert where a claimant has a combination of exertional and nonexertional limitations. *Id*. at 629. Because Haynes' residual functional capacity did not coincide with the full range of either sedentary or light work, and he had both exertional and nonexertional limitations, we held that "[t]he regulations and abundant caselaw clearly indicate that in such situations it is appropriate to consult with a vocational expert, which is precisely what the ALJ did. *See Luna v. Shalala,* 22 F.3d 687, 691 (7th Cir.1994) ('[T]his court has said that in cases where a non-exertional limitation might substantially reduce a range of work an individual can perform, the ALJ must consult a vocational expert')." (additional citations omitted) *Haynes*, 416 F.3d at 629. We upheld the ALJ's denial of benefits in *Haynes*, holding that the ALJ committed no error in relying on the vocational expert's determination, in light of Haynes's age, education, vocational factors, and residual functional capacity, that Haynes could perform work in a significant number of jobs in the regional economy. *Id*. at 629–30.

Therefore, where the exertional impairments alone do not dictate a finding of disabled, and where the impact of the non-exertional limitations on the ability to perform jobs is not obvious, we have required resort to a vocational expert to assess how the confluence of the exertional and nonexertional limitations impacted the number of jobs that the claimant could perform within a given occupational base. That is precisely

what the ALJ did here. The ALJ consulted the vocational expert and the expert testified as to the jobs that Butler could perform given his age, education, work experience, and his residual functional capacity. That procedure was proper, and therefore Butler's challenge is without merit.

Finally, Butler also contends that the ALJ's decision failed to comply with 20 C.FR. § 404.1560(c)(1), which he argues requires the ALJ to state that work exists in significant numbers either in the region in which Butler lives or in several regions of the country. Butler contends that the ALJ's decision fails to meet that requirement because the ALJ declared only that significant numbers of jobs exist in the national economy and did not include any VE statement specifically setting forth the availability of jobs in the region in which Butler lives or in several regions of the country.

As an initial matter, we note that the VE was asked whether jobs exist "in the national economy" for a person with the claimant's characteristics, and therefore the VE's response as to the jobs that exist nationwide was responding to that question. ALJ Decision at 11, App. 25. The statute defines work in the national economy as encompassing "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). There is no reason to believe that the VE was not using that statutory definition of "in the national economy" when testifying as to jobs available nationwide. But we need not explore that further, because Butler's claim fails for another reason. Butler acknowledges that the VE testified not only as to the number of positions available nationwide, but also to the number of jobs available specifically in Indiana. The VE identified 136,000 jobs nationally and 3,050

light work jobs in Indiana which the claimant could perform. Butler does not argue that the VE testimony is insufficient to meet the regulatory requirement of establishing a significant number of jobs in the region in which he lives. Instead, Butler alleges only a pro forma error, asserting merely that the ALJ failed to specifically include that VE testimony regarding the Indiana jobs in the written decision. The ALJ mentioned only the nationwide numbers, and the Indiana numbers were first discussed in the district court opinion. Thus, Butler's argument is not that the VE testimony failed to establish a significant number of jobs in the region in which Butler lived, but that the ALJ, who relied on the VE's testimony in determining the availability of work, failed to include the Indiana numbers along with the nationwide numbers in the decision denying benefits.

As we have repeatedly held, the harmless error standard applies to judicial review of administrative decisions, and "we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Zero Zone, Inc. v. United States Dep't of Energy*, 832 F.3d 654, 682 (7th Cir. 2016). In assessing whether an error is harmless, we examine the record to determine whether we can "predict with great confidence what the result of remand will be." *McKinzey*, 641 F.3d at 892. Here, Butler argues only that the ALJ failed to recite in the decision the undisputed testimony of the vocational expert. The alleged error, then, would be eliminated if the ALJ merely reissued the same opinion, including sentences that set forth that additional testimony by the vocational expert. Butler makes no argument that any evidence contradicted the VE's testimony or called into question the number of jobs available in Indiana. Nor does he argue

that the VE's testimony was unreliable, that the testimony can be challenged in any way, or that the uncontested opinion of the vocational expert is insufficient to establish that work exists in significant numbers either in the region in which Butler lives or in several regions of the country. Because he alleges merely the pro forma error of failing to recite in the decision the uncontested testimony of the VE, we can predict with great confidence what the result of remand will be, and accordingly any alleged error would be harmless. See *McKinzey*, 641 F.3d at 892 (holding that the ALJ's oversight in failing to consider a state agency physician's opinion was harmless error because we can say with great confidence that the ALJ would reach the same result on remand*); Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time").

Accordingly, we affirm the district court's judgment and the ALJ's decision.