In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1607

BRENDA L. WILDER,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:20-cv-00030 — **Joseph S. Van Bokkelen**, *Judge.*

SUBMITTED NOVEMBER 12, 2021[*] — DECIDED JANUARY 4, 2022

Before SYKES, *Chief Judge*, and RIPPLE and ST. EVE,
*Circuit Judges*.

ST. EVE, *Circuit Judge*. Brenda Wilder applied for Social Se-
curity disability benefits, asserting that she cannot work

---

[*] We granted the parties' joint motion to waive oral argument, and the
appeal is therefore submitted on the briefs and the record. Fed. R. App. P.
34(a)(2)(C).

because of hip pain, difficulty walking, lower back pain, and balance issues. After her claim was administratively denied, an administrative law judge (ALJ) concluded that Wilder's impairments, while severe, did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. The ALJ then concluded that Wilder had the residual functional capacity to perform sedentary work with limitations and that suitable jobs existed in significant numbers in the national economy, so she was ineligible for disability benefits. The Social Security Appeals Council denied Wilder's request for review, and the district court held that substantial evidence supported the ALJ's decision.

On appeal, Wilder argues that the ALJ erred by failing to consider whether she met or equaled Listing 11.17(a), even though her attorney did not argue to the ALJ that she met or equaled that Listing (or any Listing). Wilder further contends that the ALJ erred by failing to request the opinion of a medical expert, and that the ALJ's evaluation of her subjective symptoms was patently wrong. Because the ALJ's decision was supported by substantial evidence, we affirm.

## I. Background

### A. Factual Background

Wilder was born in 1970 and has a high school education. She previously worked as a motor vehicle quality worker and a salesclerk, but she has not worked since October 2015. Wilder applied for Social Security disability benefits on August 8, 2016, alleging a disability onset date of October 8, 2015. Wilder had a significant number of medical appointments in advance of filing her application. We provide a representative selection of these medical appointments between October

2014 and June 2018, which are documented in the administrative record.

On October 9, 2014, Wilder saw orthopedic surgeon Dr. Gregory McComis. Wilder said that she had been experiencing hip pain for the past two years after falling down the stairs. Dr. McComis diagnosed her with osteoarthritis and bursitis of the hip, prescribed medication, and gave her a hip injection. Wilder returned to Dr. McComis on November 4, 2014 and reported that she was still experiencing hip pain. On November 17, 2014, Wilder went to neurologist Dr. Chao Gong complaining of lower back pain. Epidurals provided temporary relief, but Wilder said that physical therapy made the pain worse. Dr. Gong noted that she had a wide-based and ataxic (unsteady) gait, left-sided lumbar paraspinal muscle tenderness, abnormal range of motion, abnormal coordination, and abnormal stability, among other things. After several similar visits, Dr. Gong diagnosed her with cerebellar ataxia on January 26, 2015.[1]

On February 10, 2016, Wilder saw neurologist Dr. Ender Akan. She reported that since turning 40 years old, her balance had deteriorated, and she began falling down. The frequency of her falls at this time is unclear from the record. She also struggled with fine motor skills and felt dizzy when lying down. Wilder could not perform a tandem gait, a test of muscular coordination and equilibrium in which "the heel of the advancing foot is put down directly in front of the toes of the

---

[1] "Cerebellar ataxia" is the loss of the ability to coordinate activity of the muscles due to a disease of the cerebellum, a part of the brain. *Cerebellar ataxia*, Attorney's Dictionary of Medicine (2021).

stationary foot."[2] Dr. Akan concluded, "I do not believe she can work in an assembly plant near any sort of machinery and I [do] not believe she can drive a car commercially." At a follow-up with Dr. McComis in March 2016, he restricted her from working until May 1, 2016.

On June 21, 2016, Wilder underwent a "spinal fusion anterior lumbar open with exploratory laparotomy." On July 6, 2016, she reported to Dr. McComis that she was still in "severe pain" and struggled to walk. Dr. McComis advised her to continue with "light activities." He also noted, however, that he observed her before her appointment "walking without difficulty and she was able to bend over and help out one of the children," even though "in the office she had significant limitations." By September 22, 2016, Dr. McComis allowed her to return to work with some restrictions: no lifting more than ten pounds and no repetitive bending or stooping. He also noted that she was "able to do heel and toe walking."

On October 5, 2016, Wilder informed Dr. Akan that she could not attend vestibular therapy due to her insurance coverage.[3] She was still struggling with dizziness and balance issues. At a follow-up appointment with Dr. McComis on November 3, 2016, he again concluded that she could go back to work with the same restrictions noted above. He also noted "[n]ormal tandon gait," by which he seems to have meant "tandem gait."

---

[2] *Tandem gait*, Attorney's Dictionary of Medicine (2021).

[3] "Vestibular" means "pertaining to, or situated in, a vestibule …, especially the vestibule of the ear." *Vestibular*, Attorney's Dictionary of Medicine (2021).

On November 28, 2016, Wilder had a physical consultative exam with Dr. Soraj Arora, as required for the Social Security disability claims process. Wilder reported that she "feels off balance and often sustains falls." At the same time, she also reported "being able to walk half a block to one block without difficulty including imbalance." She denied having "[d]ifficulty rising from [a] sitting position without assistance." When Dr. Arora asked Wilder to pick up coins, she could do so, but slowly and while holding onto the exam table. Dr. Arora observed a "normal gait" but noted that Wilder's "heel to toe gait" was "wobbly bilaterally."

By March 29, 2017, Wilder reported to Dr. Akan that her balance had gotten worse. Nonetheless, she reported "no falls." On April 25, 2017, she reported to Dr. McComis that she had pain in her low back, left hip, and left knee, particularly when bending, twisting, lifting, or trying to do housework. She also had pain when getting up and down from a seated position. On June 6, 2017, Dr. McComis recommended "a single pronged cane to help with her balance." Wilder had a second back surgery on June 14, 2017, including, among other things, a laminectomy.[4] Not long after the surgery, Wilder required a walker to ambulate. But by August 10, 2017, she was back to using a cane. Dr. McComis referred her to physical therapy.

The earliest evidence in the record of Wilder attending physical therapy is on August 14, 2017. She reported being able to stand for approximately ten minutes, which limited

---

[4] A laminectomy is a "surgical operation in which the posterior arch of a vertebra is removed." *Laminectomy*, Attorney's Dictionary of Medicine (2021).

her ability to perform household tasks like vacuuming, dishes, laundry, and cleaning. Therapist Matthew Morley observed that she had a "slow guarded gait using [a] cane in [her] right hand," and that she had "slow bed mobility and transfers." Between her initial visit and February 26, 2018, when she was "discharge[d]" from treatment, Wilder attended 27 physical therapy sessions.

On September 20, 2017, Dr. Akan again concluded, "I do not believe she can work in an assembly plant near any sort of machinery[,] and I still do not believe she can drive a car commercially." He also noted that she had "no falls," and that she used a cane. On February 28, 2018, at her eight-month follow-up after her second back surgery, Wilder reported to Dr. McComis that she still had low back pain, but she had "no pain when she is using [a] bone stimulator." On March 5, 2018, Wilder informed a nurse practitioner that she "had a recent fall due to feeling imbalance [sic]." On June 22, 2018, she informed Dr. Akan that she was experiencing "increased falls." Dr. Akan's report on this visit does not provide additional detail about the nature of the fall or if he believed that her condition had worsened.

## B. Procedural Background

Wilder's application for disability insurance benefits was administratively denied, and she requested a hearing before an ALJ. At the September 2018 hearing, Wilder testified that her "gait is off and my balance is off, real bad." She also testified that she fell spontaneously "about three times a week," and that she struggled to do daily activities like laundry, dishes, and grocery shopping. Wilder needed help from her daughter to wash clothes and cook meals. When asked if she believed she could work in an office, Wilder stated that she

would "have problems getting up walking" and that she cannot type. She also believed that she was moving more slowly due to her ataxia, and that she would have difficulty maintaining regular attendance.

Notably, Wilder's counsel at the time did not argue before the ALJ that she met or equaled Listing 11.17 ("neurodegenerative disorders of the central nervous system, such as Huntington's disease, Friedreich's ataxia, and spinocerebellar degeneration"). At the beginning of the hearing, her attorney conceded that she did not meet or equal any Listing.[5] After Wilder's testimony and the testimony of a vocational expert, however, Wilder's attorney qualified his prior statement: "I did say earlier that I didn't think that she met a listing, because there isn't a listing for this." He then added, "there could be an equivalence argument," and "I just wonder if it might be useful, if your honor does not have enough today to resolve the case, for an interrogatory [to a medical expert] to be sent out." The ALJ responded that he would consider doing so and would give the attorney an opportunity to respond.

In a written opinion issued after the hearing, the ALJ concluded that Wilder was not disabled under the Social Security Administration's five-step method. *See* 20 C.F.R. § 404.1520. First, the ALJ concluded that Wilder was not engaged in substantial gainful activity because she had not worked since October 8, 2015, the alleged disability onset date. *See* 20 C.F.R.

---

[5] When asked, "And you believe the client meets or equals the listing?" counsel responded, "No, your honor." And when asked whether "there [are] any medical source statements you'd like me to take a look at" with respect to Wilder's ability to perform any work-related activities, her attorney responded, "No."

§ 404.1520(b). Second, the ALJ concluded that Wilder suffered from the following severe impairments: cerebellar ataxia, "status-post lumbar fusion and laminectomy," osteoarthritis of the left knee, and bursitis of the left hip.[6] *See id*. § 404.1520(c). Third, the ALJ concluded that Wilder's impairments did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. *See id*. § 404.1520(d). More specifically, the ALJ concluded that Wilder's combined impairments did not meet or equal Listing 1.02 (major dysfunction of a joint) or Listing 1.04 (disorders of the spine).[7] The record showed that Wilder used a cane "at times," but there was "evidence of a normal gait," and she had not shown "an inability to ambulate effectively." The ALJ noted that she had clear problems with her gait and balance, but "often noted that she had no falls at all."

The ALJ then determined that Wilder had the residual functional capacity to perform sedentary work with some limitations. Fourth, the ALJ concluded that Wilder could no longer perform her past relevant work. *See* 20 C.F.R. § 404.1520(e). Fifth, the ALJ concluded that suitable jobs existed in significant numbers in the national economy, in light of Wilder's residual functional capacity, age, education, and

---

[6] Osteoarthritis is a joint disease marked by degeneration of parts of a joint. *Osteoarthritis*, Attorney's Dictionary of Medicine (2021). Bursitis is inflammation of a bursa (a sac filled with fluid between moving surfaces that would otherwise rub against each other). *Bursitis*, Attorney's Dictionary of Medicine (2021). The parties have not supplied a definition for "status-post lumbar fusion and laminectomy," but it appears to refer to Wilder's history of spinal fusion and laminectomy.

[7] On appeal, Wilder does not argue that the ALJ erred by concluding that she does not meet or equal these Listings.

work experience. *See id.* § 404.1520(f). The Appeals Council denied Wilder's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security for purposes of judicial review. *See* 20 C.F.R. § 404.981.

At the district court, Wilder retained new counsel, who argued that the ALJ should have considered whether she met or equaled Listing 11.17(a). That Listing requires: "Disorganization of motor function in two extremities … resulting in an extreme limitation … in the ability to stand up from a seated position [or] balance while standing or walking …." In turn, "[i]nability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without assistance of another person or the use of an assistive device, such as a walker, two crutches, or *two canes*." Listing 11.00(D)(2)(a) (emphasis added). "Inability to maintain balance in a standing position" imposes a parallel requirement of "two canes." Listing 11.00(D)(2)(b).

The district court concluded that, although there was "clear evidence" of "severe impairments that affect her balance," Wilder did not satisfy the criteria of Listing 11.17(a). The court observed: "There is no doubt Plaintiff has had difficulty walking, squatting, and balancing," but "the evidence does not show that she was *unable* to stand from a seated position or maintain an upright position." The court pointed to evidence in the record showing that Wilder was able to walk short distances without falling.

Additionally, the district court concluded that the ALJ did not err by declining to seek a medical expert's opinion as to whether Wilder's impairments medically equaled Listing 11.17(a). The court relied on Social Security Ruling 17-2p, which explains that ALJs "may ask for and consider evidence

from medical experts," but they are not required to do so if the ALJ believes "the evidence does not reasonably support a finding" that an individual meets or equals a Listing. SSR 17-2p, 2017 WL 3928306, at *3, 4 (Mar. 27, 2017).

Turning to Wilder's subjective symptoms, the district court concluded that the ALJ "could properly find that Plaintiff's statements about not having falls" at various medical appointments were inconsistent with her testimony at the hearing that she fell about three times a week. The district court concluded that the ALJ erred by making a negative inference against her that she "never attended therapy as recommended" without first exploring whether she could afford therapy. The court nonetheless determined that any error was harmless because other evidence in the record supported the ALJ's "credibility finding." For example, the ALJ noted that Wilder was able to cook, clean, care for her dog, and do other chores; two treating physicians indicated that she was capable of office work; and a consultative exam revealed intact grip strength and finger manipulation.

Wilder timely appealed the district court's decision.

## II. Discussion

This court reviews the district court's affirmance of the ALJ's decision de novo. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). We will affirm if the ALJ's decision was supported by substantial evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks and citation omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Id*. (quoting *O'Connor-*

*Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). The court will not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

The Social Security Act requires that an individual "furnish[] such medical and other evidence" of a disability in order to qualify for benefits. 42 U.S.C. § 423(d)(5)(A). Wilder bears the burden of proving that her impairments are so severe that they prevent her from performing any substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). This court has summarized the five-step analysis for disability benefits eligibility as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler*, 4 F.4th at 501 (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005)). The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five. *Id.*

Wilder raises three primary arguments on appeal: first, that the ALJ erred by finding that she did not meet or equal

Listing 11.17(a) at step three; second, that the ALJ erred by failing to require a medical expert to consider whether she medically equaled Listing 11.17(a); third, that the ALJ improperly discredited her subjective symptoms, and as a result, the ALJ erroneously found that she had the residual functional capacity to perform sedentary work. As explained below, we reject these arguments.

## A. Listing 11.17(a)

The "Listings" describe "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). An individual who satisfies one of the Listings (or its equivalent) is conclusively presumed to be disabled. *See Bowen*, 482 U.S. at 141. Accordingly, the criteria for meeting a Listing are interpreted strictly. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

We agree with the district court that Wilder does not meet Listing 11.17(a). To satisfy that Listing, Wilder needed to provide evidence that she suffered from an "extreme limitation" in her ability to either "stand up from a seated position [or] balance while standing or walking." To show an "extreme limitation" in her ability to stand up, she needed evidence that she could not "stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." Listing 11.00(D)(2)(a). By her own admission, Walker uses only one cane to walk, not two. Although she clearly struggles with her balance, there was evidence in the record that she was capable of standing up on her own and walking short distances

without incident. We conclude that substantial evidence supports the ALJ's determination that Wilder does not meet Listing 11.17(a).

Wilder argues that the Listing's definition of "extreme limitation" should not be interpreted so narrowly. She points to the words "such as" to argue that one cane could be sufficient to meet the Listing. *See* Listing 11.00(D)(2)(a). She also suggests that the ALJ should have considered whether Wilder "actually had impairments severe enough that she did need to use two canes." Wilder fails to cite case law or record evidence in support of this argument, which would essentially require ALJs to substitute their judgment for that of a claimant's own physicians. The court declines to impose such a requirement here.

Likewise, Wilder has not met her burden of showing that she medically equaled Listing 11.17(a). "If [an] impairment[] does not meet the criteria of a listing, it can medically equal the criteria of a listing." 20 C.F.R. § 404.1525(c)(5). An impairment "is medically equivalent to a listed impairment … if it is at least equal in severity and duration to the criteria of any listed impairment." *Id*. § 404.1526(a). Wilder's attorney at the ALJ hearing initially conceded that she did not meet or equal a Listing, and his subsequent suggestion that there "could be an equivalence argument" was made in passing during closing. Because the ALJ did not request an expert opinion, and Wilder's attorney did not argue that she medically equaled a specific Listing, there was no evidence in the record that could reasonably support an equivalence finding for Listing 11.17(a).

This court has observed, "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ

must discuss the listing *by name* and offer more than a per-functory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (emphasis added). Wilder points to this language repeatedly to argue that the ALJ should have considered whether she met or equaled Listing 11.17(a). But *Barnett* does not require ALJs to name and discuss every List-ing in their written decisions. Such a requirement would be particularly unreasonable where, as here, the claimant does not identify a Listing at the hearing, and her attorney even conceded that she does not meet or equal a Listing.[8]

The ALJ's opinion did discuss Listings 1.02 (major dys-function of a joint) and 1.04 (disorders of the spine), both of which are musculoskeletal impairments. The ALJ's failure to explicitly consider Listing 11.17, which falls under neurologi-cal disorders, was not reversible error. *Cf. Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) ("Because the ALJ's conclu-sion on Listing 11.17A is supported by substantial evidence on the record as a whole, the fact that he did not mention

---

[8] The Commissioner does not contend that Wilder waived or forfeited the argument that she meets or medically equals Listing 11.17(a). Accord-ingly, the Commissioner has "waived waiver." *See, e.g.*, *United States v. Jones*, 993 F.3d 519, 528 (7th Cir. 2021). We need not address whether the doctrines of waiver and forfeiture apply in the ALJ-hearing context. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) (reserving the question whether claimants must raise arguments before ALJs to preserve them for judicial review); *Kepple v. Massanari*, 268 F.3d 513, 516–17 (7th Cir. 2001) (declining to address the open question in *Sims*). The Supreme Court revisited *Sims* in *Carr v. Saul*, 141 S. Ct. 1352, 1362 (2021) (holding that claimants need not exhaust Appointments Clause challenges to the validity of ALJ decisions before seeking judicial review). *But see Carr*, 141 S. Ct. at 1359 & n.5 ("Out-side the context of Appointments Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently.").

Listing 11.17 in his opinion or thoroughly discuss each piece of medical evidence does not warrant remand.").

It is worth reiterating that a claimant bears the burden of proof at step three. *See Butler*, 4 F.4th at 501. Social Security proceedings are indeed "inquisitorial rather than adversarial." *Carr v. Saul*, 141 S. Ct. 1352, 1359 (2021) (quoting *Sims v. Apfel*, 530 U.S. 103, 110 (2000)). But neither the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely. Social Security Regulation 17-2p provides: "If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306, at *4. Therefore, we conclude that substantial evidence supports the ALJ's determination that Wilder did not medically equal a Listing.

## B. ALJ's Failure to Request a Medical Expert's Opinion

Similarly, we reject Wilder's suggestion that the ALJ was required to seek evidence of medical equivalence from a medical expert. According to Social Security Ruling 17-2p, "If an [ALJ] believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, *we do not require the adjudicator to obtain [medical expert] evidence* or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306, at *4 (emphasis added). Rather, ALJs "*may* ask for and consider evidence from medical experts … about the

individual's impairment(s), such as the nature and severity of the impairment(s)." *Id*. at *3 (emphasis added).

To be sure, Social Security Rulings lack the force and effect of law, but they are binding on ALJs. *See Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999); 20 C.F.R. § 402.35(b)(1). As long as the ALJ "believe[d] that the evidence [did] not reasonably support a finding that [Wilder's] impairment(s) medically equal[] a listed impairment," he was not required to obtain a medical expert's opinion. SSR 17-2p, 2017 WL 3928306, at *4. We agree with the district court that the ALJ's decision not to request such an opinion does not warrant remand.

## C. Subjective Symptoms

This Court will uphold an ALJ's credibility determination unless that determination is "patently wrong." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012)). Social Security Ruling 16-3p explains factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. 2017 WL 5180304 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. Notably, ALJs "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p, 2017 WL 5180304 at *11. Instead, ALJs should "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and … whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id*.

Wilder argues the ALJ improperly made an adverse inference against her by focusing on examples in the record when

she told doctors she had "no falls." The Commissioner responds that the ALJ merely wrote that Wilder "*often* noted that she had no falls at all." The court agrees with the Commissioner that there was ample evidence to support this observation. At three medical appointments between April 2016 and September 2017, Wilder told her physicians that she had not experienced any falls. It is certainly possible that her condition had deteriorated by September 2018 when the hearing took place, but the ALJ was entitled to consider whether her testimony that she falls three times a week was consistent with the record.

To the extent that the ALJ found Wilder not credible, there was evidence in support of that conclusion as well. Dr. McComis, the orthopedic surgeon who she saw regularly for years, observed before an exam that Wilder walked without difficulty and even bent over to help her children. The ALJ also found it significant that, although Dr. Akan believed that she should not work around machinery, Dr. McComis repeatedly noted that she could return to work in some capacity, so long as she did not lift more than 10 pounds or repeatedly bend or stoop.

Additionally, the ALJ disregarded the opinion of state agency consultants who found that Wilder could perform light work—as opposed to sedentary work—with postural and hazard limitations. The ALJ concluded that their opinions were inconsistent with the record because Wilder occasionally needed to use a cane. This analysis suggests not only that the ALJ was aware of Wilder's limited mobility, but also that he credited her testimony (at least in part) regarding her balance issues, pain, and postural limitations.

We have repeatedly emphasized that "the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *Butler*, 4 F.4th at 504 (internal quotation marks omitted). An error is harmless if, upon examination of the record, the court can "predict with great confidence what the result of remand will be." *Id*.

We agree with the district court that the ALJ was plainly incorrect when he wrote that Wilder "never attended therapy as has been recommended." Later in that paragraph, however, the ALJ wrote that she "admitted … to improvement in her back with therapy and the bone stimulator." Elsewhere in the opinion, the ALJ observed that "therapy helped some but she still had back pain." Wilder has not explained how the ALJ would have reached a different conclusion as to her residual functional capacity, even if he had not erroneously remarked that she failed to attend therapy. Because the court can "predict with great confidence what the result of remand will be," any error was harmless. *Id*.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.