In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2130

DONNA M. JARNUTOWSKI,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-02957 — **Sheila Finnegan**, *Magistrate Judge.*

ARGUED JANUARY 13, 2022 — DECIDED SEPTEMBER 12, 2022

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. One of the primary distinctions between "light work" and "medium work" in Social Security disability determinations is that the lifting and carrying weight requirements associated with medium work are more than double those of light work. The Administrative Law Judge ("ALJ") found that Donna Jarnutowski's "residual functional capacity" was limited to light work with some

restrictions before her final foot surgery, but increased to medium work after the surgery. The ALJ concluded that this increase in Jarnutowski's capacity meant she could perform her past work as a store's department manager and was therefore no longer disabled. The district court affirmed the ALJ's decision, and Jarnutowski now appeals.

We find that the ALJ failed to explain how, after surgery, Jarnutowski could lift or carry objects more than twice the weight of objects she lifted or carried before surgery. Based on the ALJ's failure to, as we have previously termed it, build a "logical bridge" from the evidence to her conclusion that Jarnutowski could perform medium work after her final foot surgery, we reverse.

## I.  Background

In 2016, Jarnutowski filed an application for disability insurance benefits under Title II of the Social Security Act, claiming that she became disabled and unable to work in 2012 due to a right foot condition, neck and leg pain, obesity, and mental health issues. Jarnutowski's right foot condition is most relevant to this appeal. To address that condition, Jarnutowski underwent multiple surgeries, X-rays, and CT scans between 2011 and 2015. She had her final foot surgery in February 2015.

In 2018, the ALJ granted Jarnutowski a closed period of disability due to her impairments after considering Jarnutowski's testimony during an administrative hearing, Jarnutowski's medical records, the opinions and records of Jarnutowski's treating physicians, and the opinions of agency consultants. Summaries of the relevant evidence and the ALJ's decision follow.

## A. Relevant Record Evidence

*Jarnutowski's hearing testimony.* At a hearing before the ALJ, Jarnutowski testified that her right foot condition impaired her ability to lift, carry, walk, stand, sit, and crouch, and otherwise interfered with her daily activities. For example, she relayed that her husband needed to carry the vacuum up or down stairs for her, she could not carry her grandchildren after they weighed more than 10 pounds, and she could not carry grocery bags or a laundry basket. She also testified that driving caused her foot pain, and she could vacuum for only 10 minutes at a time and wash dishes for 15 minutes.

Jarnutowski testified that she needed to take breaks while walking or standing, and that she had difficulty climbing stairs or walking on uneven terrain. She said that she could not bend her ankle or big toe and had constant foot pain, even while sitting, but sitting with her leg elevated alleviated her pain.

Jarnutowski testified that her ill mother lived with her at one point, but her husband and home healthcare workers mostly provided her mother care. According to Jarnutowski, she cared for her mother mostly by sitting with her and keeping her company.

Jarnutowski acknowledged that, after her 2015 surgery, she felt "more comfortable" and about 50 percent better with pain medicine. But she maintained that there were still limits to what she could do.

*The opinions and records of Jarnutowski's treating physicians.* Dr. Armen Kelikian is an orthopedic physician who treated Jarnutowski for approximately four years and performed at least two of her foot surgeries, including her last surgery in

February 2015. In support of Jarnutowski's request for disability benefits, Dr. Kelikian opined about Jarnutowski's functional ability on a preprinted form. He indicated that Jarnutowski could only rarely lift and carry 50 pounds, occasionally lift up to 20 pounds, and frequently lift less than 10 pounds. He opined that she would be off-task 10 percent of the workday and would be absent from work two days per month.

Dr. Kelikian indicated that Jarnutowski could walk no more than three blocks without rest or severe pain and could sit, stand, or walk for no more than 30 minutes at a time up to two hours per day. He further opined that she needed to be able to shift positions at will, walk for 15 minutes every half hour, and elevate her right leg for 25 percent of the workday.

There is no area on the form dedicated to objective exam findings or diagnostic testing to support an opinion, and it is unclear whether Dr. Kelikian attached any treatment notes, reports, or test results to the form. However, Dr. Kelikian's treatment notes, reports, and test results are in the record. Dr. Kelikian's treatment records show that after Jarnutowski's last foot surgery, she wore a post-operative shoe while her foot healed. In November 2015, Dr. Kelikian recommended recreational and dress shoes for Jarnutowski and noted that she could participate in walking. By the following January, Dr. Kelikian noted that an X-ray of Jarnutowski's foot showed degenerative changes, but she could still participate in "[a]ctivity as tolerated." Dr. Kelikian's evaluation was similar during Jarnutowski's next visit in July 2016. After that, Jarnutowski did not receive any further treatment for her foot.

Jarnutowski also submitted records from her treating internist, Dr. Kiranjit Deol. Dr. Deol indicated in his March 2017

notes that Jarnutowski complained of chronic pain in her right foot, neck, and shoulder. But in July 2017, he wrote that Jarnutowski had a normal gait, and in November 2017, he wrote that Jarnutowski had a normal range of neck motion. Dr. Deol prescribed Jarnutowski narcotics for pain management. Dr. Deol's treatment records do not expressly address Jarnutowski's functional capabilities.

*The opinions of agency consultants.* Two agency consulting physicians reviewed Jarnutowski's medical records and opined that Jarnutowski had severe joint dysfunction, but that there was insufficient medical evidence to determine her functionality.

## B. The ALJ's Decision

The ALJ awarded Jarnutowski benefits in part, finding that she was disabled only from September 11, 2013, through January 18, 2016. Relevant to this appeal, the ALJ found that during that two-year, four-month period Jarnutowski only had the ability to perform light work with some limitations; her foot condition, neck issues, and obesity were severe impairments; and, she was disabled by direct application of the Medical-Vocational Guidelines due to her age.

The ALJ concluded, however, that Jarnutowski's disability ended January 19, 2016, due to medical improvement. Specifically, the ALJ found that Jarnutowski regained the ability to perform medium work after her foot surgery in 2015, and therefore she was again able to perform her past work as a store's department manager. The ALJ did not explicitly address Jarnutowski's functional capabilities related to medium work, including Jarnutowski's ability to lift objects weighing up to 50 pounds and frequently lift or carry objects weighing

up to 25 pounds. 20 C.F.R. § 404.1567(c). Instead, the ALJ emphasized Jarnutowski's ability to walk after her surgery, pointing to Dr. Kelikian's September 2015 note that Jarnutowski "may participate in walking," his later note that she could participate in "activity as tolerated," and his recommendations for non-orthopedic shoes. The ALJ also cited treatment records showing that Jarnutowski did not walk with an irregular gait or have any other mobility problems as of January 19, 2016.

The ALJ explained that Jarnutowski's "normal objective exam findings" from Dr. Deol's physical exams supported her conclusion that Jarnutowski could walk and perform medium work. The ALJ did not explain what exam findings she relied on, and it does not appear that Dr. Deol explicitly considered Jarnutowski's foot condition or ability to lift.

The ALJ noted that Jarnutowski's foot X-rays in January 2016 showed moderate degenerative changes, ossification, and well-aligned fusion. The ALJ highlighted that Jarnutowski did not receive additional orthopedic follow up for her foot after 2016, but the ALJ acknowledged that Jarnutowski's insurance changed in 2017, requiring her to find all new doctors.

The ALJ declined to credit Jarnutowski's description of her own pain and issues with walking. The ALJ also gave no weight to Dr. Kelikian's opinion about Jarnutowski's functional capabilities because the ALJ believed that the doctor's opinion was "inconsistent with the longitudinal record," particularly Jarnutowski's reduced treatment and exam findings. The ALJ concluded by explaining that Jarnutowski could perform her past relevant work as a store's department manager,

which a vocational expert described as consistent with an ability to perform medium work.

The Appeals Council denied Jarnutowski's request for review, and Jarnutowski appealed the ALJ's decision to the district court. By the parties' consent under 28 U.S.C. § 636(c), a magistrate judge reviewed the appeal and affirmed the ALJ's decision. Jarnutowski timely appealed to this court.

## II.  Standard of Review

"We review de novo the district court's affirmance of the ALJ's decision and review directly the decision of the ALJ." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). In doing so, we apply a "very deferential standard of review" to the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). We will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 4 F.4th at 501 (quotation omitted); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "As such, our role is extremely limited." *Elder*, 529 F.3d at 413. "We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900. "In fact, even if reasonable minds could differ concerning whether [Jarnutowski] is disabled, we must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." *Elder*, 529 F.3d at 413 (quotation omitted). But even under this deferential standard of review, an ALJ "must provide a logical bridge between the evidence and [her] conclusions." *Butler*, 4 F.4th at 501 (quotation omitted).

### III. Discussion

Jarnutowski challenges the ALJ's finding that she could perform medium work after her final foot surgery. Before addressing Jarnutowski's challenge, we provide brief background on residual functional capacity, the core concept underlying the ALJ's determination, and the distinction between "medium work" and "light work" in the Social Security regulations.

### A. Residual Functional Capacity, Medium Work, and Light Work

Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work. SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). It is the most an individual can work despite his or her limitations or restrictions. *Id.* The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. *Id.* at 34477. The regulation also requires an ALJ to describe "how the evidence supports each conclusion [about a strength function], citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* at 34478. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (quotation omitted).

An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for us to reverse an ALJ's decision. *See, e.g.*, *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352

(7th Cir. 2005) ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (explaining that although an ALJ's failure to comply with SSR 96-8p "does not *necessarily* require remand," we must be satisfied that an ALJ considered SSR 96-8p's requirements and produced a decision supported by substantial evidence). But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ "buil[t] an accurate and logical bridge from the evidence to her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quotation omitted). Essentially, an ALJ's RFC analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

At oral argument, the parties agreed that the primary and relevant difference between light work and medium work is the lifting and carrying weight requirements. According to the Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Additionally, "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping." SSR 83-10. Both light work and medium work "require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to" the specified amounts. *Id.* In sum, because the standing and

walking requirements are similar between light work and medium work, it is the disparate lifting and carrying weight requirements that earn our entire focus in today's decision.

## B. Jarnutowski's Challenge to
## the ALJ's Medium Work Finding

The ALJ here concluded that, although Jarnutowski previously was limited to light work with some restrictions before her final foot surgery, she could perform medium work after the surgery. The ALJ reached that conclusion without complying with SSR 96-8p, which, as mentioned, is a sufficient basis for reversal. *See Briscoe*, 425 F.3d at 352. Nevertheless, the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis. The ALJ did not explain how Jarnutowski could lift and carry up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds. *See* 20 C.F.R. § 404.1567(c). The ALJ also failed to sufficiently explain why she discredited evidence from Jarnutowski and Dr. Kelikian, the only two people who directly addressed Jarnutowski's lifting abilities. We are not convinced, then, that the ALJ built an "accurate and logical bridge" from the evidence to her conclusion that Jarnutowski could perform medium work. *Berryhill*, 898 F.3d at 757.

First, the ALJ did not directly address Jarnutowski's lifting and carrying ability, which is an important inquiry given that the primary difference between light and medium work is the lifting and carrying weight requirement. Instead, the ALJ emphasized throughout her decision Jarnutowski's ability to walk with a regular gait and without orthopedic shoes after her surgery. *See, e.g.*, Admin. R. at 20, ECF No. 9, *Jarnutowski v. Kijakazi*, 19- 2957 (N.D. Ill. 2019) ("[A]fter surgery, there was

not any indication that she could not walk or ambulate effectively."); *id.* at 29 (noting Dr. Kelikian's treatment records that Jarnutowski "may participate in walking"). But Jarnutowski's ability to walk is not enough to show that she can perform medium work. Indeed, "one's medical condition could improve drastically, but [one can] still be incapable of performing" the relevant work. *Murphy*, 759 F.3d at 819. "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Id.* The ALJ failed to explain how the evidence showed that Jarnutowski improved enough after her foot surgery to lift and carry twice as much weight as before her surgery. *See* SSR 83-10 (explaining medium work).

Second, the ALJ failed to adequately explain why she discredited the evidence from Jarnutowski and Dr. Kelikian about Jarnutowski's RFC and lifting capabilities; they were the only two people who addressed the issue. Jarnutowski testified that although she felt more comfortable after her foot surgery, her functioning was still limited. The ALJ discredited Jarnutowski's testimony primarily through "the type of boilerplate language that we have consistently criticized." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) (collecting cases and rejecting as boilerplate the same language that the ALJ uses here). *See, e.g.*, R. at 30 (using labeled boilerplate in *Minnick* and stating that Jarnutowski's "impairments could reasonably be expected to produce the alleged symptoms … the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision"); *id.* ("As for

the claimant's statements about the intensity, persistence, and limiting effects of [her] symptoms, they are inconsistent because the record does not evidence her alleged loss of functioning … the overall record evidences her ability to work at the full range of medium work.") The use of boilerplate language is not necessarily grounds to vacate the ALJ's decision if the ALJ otherwise justifies her decision to discredit Jarnutowski's testimony. *Id.* But the ALJ provided no sufficient explanation.

According to the ALJ, Jarnutowski's subjective complaints and limitations were inconsistent with her activities. To the extent that the ALJ was referring to Jarnutowski's housework and familial obligations, we see no inconsistency. For example, Jarnutowski testified that she could not carry her grandchildren after they weighed more than 10 pounds, a vacuum up or down stairs, or carry grocery bags or a laundry basket. And, although Jarnutowski cared for her mother, she limited her care to sitting with her mother and keeping her company. These activities do not undermine her complaints and limitations. Nevertheless, Jarnutowski's reported activities do not support finding that she could perform medium work because "there are critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Further, the medical evidence supports Jarnutowski's subjective complaints. *See Minnick*, 775 F.3d at 937 ("[T]he ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings."). Jarnutowski's X-rays after the closed disability period showed degeneration

and ossification in her foot, her medical records consistently indicated complaints of foot pain, and Dr. Deol prescribed Jarnutowski narcotics for pain management. Because the ALJ failed to articulate sufficient reasons for discrediting Jarnutowski's testimony and because medical findings support Jarnutowski's subjective complaints, we cannot uphold the ALJ's credibility determination that resulted in discounting one of the two critical pieces of evidence (Jarnutowski's testimony) about Jarnutowski's exertional capacity.

The ALJ also erred by discrediting Dr. Kelikian's opinion about Jarnutowski's RFC without sufficient explanation. For claims like Jarnutowski's filed before 2017, the treating physician's opinion is entitled to controlling weight if it is supported by medical evidence and is consistent with the record. *See* 20 C.F.R. § 404.1527(d)(2); *Reinaas*, 953 F.3d at 465. If an ALJ discounts a treating physician's opinion, the ALJ must adequately articulate the reasons for doing so, *Minnick*, 775 F.3d at 938, and "explain her decision with reference to the nature and extent of [the treating physician's] treatment and his area of specialty." *Reinaas*, 953 F.3d at 466. The ALJ failed to do so here.

Dr. Kelikian, as Jarnutowski's treating orthopedic physician for at least four years, opined that Jarnutowski could rarely lift and carry 50 pounds, occasionally lift up to 20 pounds, and frequently lift less than 10 pounds; she could stand and walk for about two hours in an eight-hour workday; and she needed to elevate her right leg to waist level for 25 percent of the workday due to pain. His treatment records noted that Jarnutowski's X-rays showed degenerative changes. Nevertheless, the ALJ discredited Dr. Kelikian's opinion because, according to her, the opinion was

"inconsistent with the longitudinal record." That explanation is not enough here where the ALJ fails to point to any direct evidence in the longitudinal record that rebuts Dr. Kelikian's opinion that Jarnutowski could lift and carry more than the amounts he specified.

The ALJ's failure to provide adequate reasoning for rejecting Jarnutowski's testimony and Dr. Kelikian's opinion as to Jarnutowski's lifting and carrying capabilities is a sufficient basis for reversal. More concerning, without information about Jarnutowski's RFC, which both Jarnutowski and Dr. Kelikian provided, we cannot discern what evidence the ALJ used to reach her conclusion that Jarnutowski could perform medium work. "The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning." *Minnick*, 775 F.3d at 938 (citing *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)). We cannot follow the ALJ's reasoning here.

In sum, because the ALJ failed to explain how Jarnutowski could lift and carry up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds, and failed to sufficiently explain why she discredited Jarnutowski's testimony and Dr. Kelikian's opinion on this issue, we find that the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion that Jarnutowski could perform medium work.[1]

_____

[1] Although, by regulation, Jarnutowski's age does not factor into the ALJ's RFC assessment, *see* SSR 96-8p, we note that Jarnutowski had already reached what Social Security regulations consider an advanced

**IV. Conclusion**

For the reasons discussed above, we REVERSE the district court's judgment upholding the Commissioner's decision denying Jarnutowski disability benefits after January 18, 2016, and REMAND with instructions that the matter be returned to the Social Security Administration for further proceedings consistent with this opinion.

---

age—age 55—by the time the ALJ determined that she could perform medium work.

BRENNAN, *Circuit Judge,* dissenting. In reversing the district court and the ALJ, my colleagues conclude that:

- The ALJ did not explain why Jarnutowski could do "medium work" as defined in 20 CFR 404.1567(c); and

- The ALJ incorrectly discredited evidence from Jarnutowski and her physician, Dr. Armen Kelikian, about Jarnutowski's residual functional capacity (RFC) and lifting capabilities.

As to the first conclusion, in my view of the full record, to require the specific finding the majority decides is absent would flip the burden of proof from Jarnutowski to the Commissioner. On the second conclusion, to me the ALJ adequately explained why she rejected the claimant's statements and her physician's opinions—they were inconsistent with the record evidence. For these reasons, I respectfully part ways with the majority.

### A. Given the ALJ's full decision, a specific finding on the claimant's lifting capability is not required.

The majority opinion concludes that the "ALJ failed to explain how Jarnutowski improved enough after her foot surgery to lift and carry twice as much weight as before her surgery," the primary difference between "light work" as defined in 20 CFR 404.1567(b) and "medium work" under 20 CFR 404.1567(c). To my colleagues, this failure to build a "logical bridge" between the evidence and the ALJ's conclusions results in reversal. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quotation omitted).

But this conclusion points only to the section of the ALJ's opinion concerning Jarnutowski's improvement and the

determination that she had the RFC to perform the full range of medium work. ALJ Decision at 14-15. Considering the ALJ's entire opinion, our very deferential review, and keeping in mind that the burden of proof remains on the claimant when the ALJ determines the RFC, the majority requires a specificity and explanation beyond what the regulations and case law requires.

First, the section of the ALJ's decision concerning "medium work" should not be read as her entire decision. The ALJ's full decision—including her determination that Jarnutowski had the RFC to perform "light work" (with certain limitations) from September 11, 2013 to January 18, 2016 (ALJ Decision at 7–11), as well as her detailed explanation of Jarnutowski's medical improvement (ALJ Decision at 14–15)—shows that the ALJ comprehensively considered the record evidence. An ALJ adequately supports an RFC determination when she "consider[s] all limitations supported by [the] record evidence" and "tie[s] the record evidence to the limitations included in the RFC finding." *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019). The ALJ met that obligation here. Her full explanation of why the record evidence led to Jarnutowski's RFCs—first for light work, and then for medium work—is all that is required.

Second, it was Jarnutowski's burden, not the Commissioner's, to prove that she was disabled. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). The RFC determination is made after step three and before step four in the five-step sequential evaluation process to determine whether an individual is disabled. 20 CFR 404.1520(a). At that point in the process, the claimant bears the burden of proof, which remains

on the claimant until step five. *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021).

The majority opinion requires a level of specificity and explanation beyond what the regulations and case law demand. This effectively shifts the burden away from the claimant and onto the Commissioner to show why an RFC to perform "medium work" is appropriate.

Jarnutowski did not satisfy her burden to show that the ALJ's post-improvement RFC assessment did not sufficiently account for her impairments and symptoms. Put another way, nowhere does Jarnutowski explain, based on the evidence, why the ALJ's limitations beginning January 19, 2016 did not account for her consistently normal examination findings since that date and the evidence the ALJ cited of her improvement. Based on her improvement, the ALJ found that Jarnutowski could perform one of her previous jobs as a department manager. ALJ Decision at 15.

The ALJ concluded in her review that the evidence did not persuasively establish greater limitations than those accommodated by the RFC assessment after Jarnutowski's period of disability ending in January 2016. After that date, as the ALJ explained in detail, Jarnutowski's impairments had improved. ALJ Decision at 14–15.

Substantial evidence supported the ALJ's conclusion and explanation. After 2016 Jarnutowski had essentially normal examination findings, and she had no follow-up or treatment with her orthopedic surgeon. Her pain symptoms were also effectively controlled with medication, and at a January 18, 2016 visit her treating physician released her to "activity as tolerated" with no other restriction. *Id*. at 14–15. Jarnutowski

was "very active in an array of activities" since her last sur-
gery in February 2015, and she had no significant issues in
2017 or 2018. *Id.* at 14. Relying on those facts, the ALJ deter-
mined that "[t]he record evidences an improvement in her
medical impairments." *Id.* at 15. All this constitutes substan-
tial evidence showing medical improvement. The ALJ thus
concluded that Jarnutowski had the RFC to perform the full
range of medium work beginning January 19, 2016. *Id*. Sub-
stantial evidence supported that conclusion, to which we
should defer.

### B. The ALJ adequately explained why she did not credit Jarnutowski and Dr. Kelikian.

The ALJ gave the same reason for not crediting the state-
ments of the claimant and the opinion of her doctor—incon-
sistency with the record evidence.

The ALJ contrasted Jarnutowski's medical and non-medi-
cal statements about her limitations, with the record evidence
of her improvement in her impairments that relate to her abil-
ity to work. ALJ Decision at 15. When giving this reason, the
ALJ expressly stated that she referred to "the overall record."
*Id.* For the ALJ, that record was "consistent with the reduced
treatment and good findings on exams" of Jarnutowski. *Id*.

The ALJ also "considered" the medical opinion of Jarnu-
towski's physician, Dr. Kelikian, but she did not give it "slight
weight as previously indicated" because it was inconsistent
"with the longitudinal record and especially the period after
the closed period of disability (Exhibit 13F)."[1]   *Id*.

---

[1] Exhibit 13F is the Physical Medial Source Statement, a form filled out by
Dr. Kelikian on August 31, 2016. R. 799–801.

"Longitudinal medical evidence refers to medical evidence covering a significant period that documents the claimant's medical history." Social Security Administration Program Operations Manual System DI 22505.010. Here, the record about Jarnutowski's claim spanned from 2012 through May 25, 2018, the date of the ALJ's decision. And as noted above, the ALJ detailed Jarnutowski's medical improvement in her impairments that relate to her ability to work. ALJ Decision at 14–15.

This court has stated, "[i]f the ALJ discounts the physician's opinion after considering" relevant factors, "we must allow that decision to stand so long as the ALJ 'minimally articulate[d] his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder v. Asture*, 529 F.3d 408, 415 (7th Cr. 2008) (citations omitted). To me, the ALJ gave a reasoned explanation for not crediting Dr. Kelikian.

Jarnutowski wants it both ways. She contends the ALJ used too much independent judgment by not relying on her doctor's medical opinion, but that the ALJ did not do enough to connect the evidence to the conclusion that Jarnutowski could perform "medium work." This is why our court is not to substitute our judgment for the ALJ's determinations, as long as those determinations are supported by substantial evidence. *Gedatus*, 994 F.3d at 900.

The ALJ explained why she did not credit the testimony of Jarnutowski and the opinion of Dr. Kelikian—inconsistency with the record—and supported that reason with contrasting references from the evidence.

*     *     *

In this type of appeal, we apply a "very deferential standard of review to the ALJ's decision, *Elder*, 529 at 413 (7th Cir. 2008), because "our role is extremely limited." *Id.* I would hew to that role and affirm the district court's grant of summary judgment. I respectfully dissent.