In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2668

MICHAEL LINCOLN,

*Plaintiff-Appellant,*

*v.*

FRANK BISIGNANO,[1] Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 23-cv-01177 — **Jonathan E. Hawley**, *Judge.*

ARGUED MAY 14, 2025 — DECIDED APRIL 23, 2026

Before SYKES, JACKSON-AKIWUMI and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Michael Lincoln applied for disability insurance benefits and supplemental security income, alleging disability beginning in October 2019. An administrative law judge (ALJ) found Lincoln was not disabled upon

---

[1] Frank Bisignano replaced Leland Dudek as Commissioner of the Social Security Administration and is substituted as the defendant-appellee. *See* FED. R. APP. P. 43(c)(2).

concluding that his residual functional capacity (RFC)[2] would allow him to perform his past work as a school bus driver. The district court affirmed.

On appeal, Lincoln challenges the ALJ's RFC determination, arguing the ALJ failed to properly evaluate evidence pertaining to Lincoln's use of a cane and fatigue. Because substantial evidence supports the ALJ's decision, we affirm.

## I.    BACKGROUND

In his application for disability insurance benefits and supplemental security income disability benefits, Lincoln claimed that conditions including prostate cancer limited his ability to work. Lincoln began treatment for cancer in November 2019, including chemotherapy, hormonal therapy (also referred to as Lupron injections or androgen deprivation therapy), and radiation beam therapy. He concluded radiation beam therapy roughly six months later, in May 2020. By the following month, Lincoln's prostate-specific antigen (PSA) levels, which signal the presence of prostate cancer, were undetectable. Lincoln continued to receive Lupron injections every six months through May 2021. Lincoln's prostate cancer was in remission.

On May 25, 2022, ALJ Michael Hellman held a hearing on Lincoln's application and on August 3, 2022, found Lincoln was not disabled.

---

[2] "Residual functional capacity ('RFC') is an assessment of an individual's ability to do sustained work." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). "It is the most an individual can work despite his or her limitations or restrictions." *Id*.

The ALJ reasoned that Lincoln had the residual functional capacity to perform "light work" with certain postural limitations, including that he could "occasionally climb ramps or stairs; never climb ropes, ladders, and scaffolds; frequently balance and stoop; and occasionally kneel, crouch, and crawl." This RFC, in conjunction with testimony from Lincoln and a vocational expert, allowed the ALJ to conclude that Lincoln was able to perform his past work as a school bus driver at the light exertional level.

In "reducing" Lincoln's RFC to "light work with additional postural limitations," the ALJ found relevant Lincoln's reports of daily fatigue stemming from his cancer treatments, as well as complaints of back and hip pain. At the same time, the ALJ decided against "rely[ing] heavily" on Lincoln's subjective complaints because Lincoln's statements about the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent" with other evidence in the record. For instance, the ALJ noted that despite Lincoln's allegations of fatigue, Lincoln engaged in various activities of daily living and received "minimal" treatment for fatigue. Moreover, the ALJ found probative notes from various medical appointments in 2020 and 2021. These notes included observations that Lincoln reported feeling "well" overall; that Lincoln had a "little bit of fatigue" but "no significant difficulties"; that Lincoln's report of fatigue was "somewhat nonspecific"; and that Lincoln reported his energy being at "baseline."

The ALJ also determined that there was "no indication" that Lincoln required a cane "on an ongoing basis." While the ALJ acknowledged Lincoln used a cane during some examinations, the ALJ observed that in August 2020, Lincoln reported using a cane "only occasionally" and was able to walk

greater than 50 feet without support; in November 2021, Lincoln had a "normal" gait and no gross motor deficits; in December 2021, Lincoln's primary care physician encouraged him to move as much as possible and recommended physical therapy while declining to provide him a handicap parking placard because he would not yet qualify; in January 2022, Lincoln briefly used a walker following a medical procedure; and in March 2022, Lincoln had a full range of motion despite an abnormal gait and cane use.

Medical opinions also informed the RFC determination. The ALJ found "substantially persuasive" the opinions of state agency medical consultants, which the ALJ observed were consistent with one another. Those opinions included findings that Lincoln could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday.

In contrast, the ALJ found "only partly persuasive" an August 2020 opinion of Advanced Practice Nurse Alisha Jackson, who had treated Lincoln. Nurse Jackson concluded that Lincoln's physical limitations were much greater. For instance, she opined that Lincoln had pain so constantly severe that it impaired his ability to perform "even simple work tasks"; could walk only one city block without resting or experiencing severe pain; needed to stand after one hour of sitting and could stand for only 30 minutes before needing to sit or walk; could not sit for more than two hours total in a workday; could not stand or walk for more than two hours total in a workday; could never lift more than 20 pounds; and needed a cane when walking or standing. In deeming Nurse Jackson's opinion only partly persuasive, the ALJ found it important

that the opinion seemed "based solely on [Lincoln's] complaints and nothing objective," was issued within twelve months after the alleged onset date of Lincoln's disability, and was "overall not fully supported and not consistent with other opinions of record."

The ALJ ultimately denied Lincoln's application. Although the ALJ found Lincoln suffered from prostate cancer (now in remission), lumbar spondylosis, and obesity, he retained the RFC to perform light work with certain postural limitations. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(c). In light of this RFC, the ALJ concluded that Lincoln could return to his past work as a school bus driver at the light exertional level. As such, Lincoln was found not disabled at any time from the alleged onset date through the date of the decision. The Appeals Council denied further administrative review, making the ALJ's decision the final decision of the Commissioner. On judicial review, the district court affirmed the ALJ's denial of benefits. This appealed followed.

## II.   DISCUSSION

On appeal, Lincoln challenges the ALJ's determination that he was capable of performing light work, and thus not entitled to disability benefits or supplemental security income. He contends the ALJ failed to properly account for the severity of his fatigue and his need for a cane. Also, he maintains the ALJ failed to support the decision to "partly" credit the opinion of Lincoln's primary care provider, Nurse Jackson. We will discuss each of these arguments in turn.

"We review de novo the district court's affirmance of the ALJ's decision and review directly the decision of the ALJ." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). "We will

reverse the decision of an ALJ only if it is based on incorrect legal standards or unsupported by substantial evidence." *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023). And the threshold for "substantial evidence" is low, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation and citation omitted). Under this deferential standard, "[w]e will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). However, "we conduct a critical review because [the ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025) (internal quotation and citation omitted). In other words, the ALJ must provide a logical bridge from the evidence to his conclusion. *Id.*

A claimant proves disability by showing "that he or she 'is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (quoting 42 U.S.C. § 1382c(a)(3)(A)). The "claimant bears the burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025).

ALJs use a five-step analytical process to determine whether a claimant is eligible for benefits on the basis of disability. They consider whether "(1) the claimant is presently employed; (2) the claimant has a severe impairment or

combination of impairments; (3) the claimant's impairment
meets or equals any impairment listed in the regulations as
being so severe as to preclude substantial gainful activity;
(4) the claimant's residual functional capacity leaves him un-
able to perform his past relevant work; and (5) the claimant is
unable to perform any other work existing in significant num-
bers in the national economy." *Butler*, 4 F.4th at 501 (internal
quotation and citation omitted).

At issue here is step four, which encompasses the ALJ's
assessment of Lincoln's RFC. At bottom, Lincoln maintains
that the ALJ's RFC finding failed to properly account for the
severity of his fatigue and his need for a cane. First, we ad-
dress Lincoln's arguments that the ALJ erred in evaluating
certain medical records and Lincoln's reported symptoms.
We then turn to Lincoln's contention that the ALJ should have
credited to a greater degree the opinion of Nurse Alisha Jack-
son, who concluded that Lincoln's fatigue and cane usage
would cause significant interference with Lincoln's ability to
carry out simple work tasks.

**A. ALJ's Assessment of Lincoln's Medical Records and
Symptoms**

Lincoln asserts that the ALJ failed to properly account for
Lincoln's need for a cane and fatigue by overlooking or mis-
characterizing relevant evidence and patently erring in as-
sessing Lincoln's reported symptoms.

*1. Cane Use*

Lincoln argues the ALJ overlooked medical records from
the spring and summer of 2021 which observed that Lincoln
used a cane, as well as a note from a March 2022 medical ap-
pointment reflecting that Lincoln reported always using a

cane. He characterizes the record as showing worsening balance over time and complete dependence on a cane by 2021. In Lincoln's view, omitting discussion of these facts violated Social Security Ruling 96-8p, which requires an ALJ to look at all relevant evidence, and led the ALJ to render a decision "based on an incomplete picture of the evidence."

We disagree and find supported by substantial evidence the ALJ's determination that Lincoln did not require a cane on an ongoing basis. Although Lincoln cites portions of the record indicating he increasingly used a cane in the spring and summer of 2021 and in 2022, the ALJ assessed that same evidence in the same timeframe and weighed it differently. The ALJ concluded the evidence reflected that Lincoln did not always require a cane. Specifically, the ALJ noted that in November 2021, Lincoln's gait was normal; and in December 2021, Lincoln's primary care physician denied Lincoln a handicap parking placard because he would not yet qualify. The ALJ could reasonably conclude from these facts, along with records from earlier in time which reported that Lincoln could walk more than 50 feet without support and only "occasionally" used a cane, that Lincoln's use of a cane was not ongoing during the time he alleged disability.

Finding otherwise would require us to "reweigh the evidence" on appeal, which we are unable to do. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). And to the extent Lincoln suggests the ALJ was required to independently discuss each of the medical records he cites on appeal, we stress that an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

Ultimately, what matters is that the ALJ based his decision on such evidence that a reasonable mind could find adequate to support the ALJ's conclusion. *Jarnutowski*, 48 F.4th at 773.

### 2. Fatigue

Lincoln further argues that the ALJ did not adequately account for his fatigue. In particular, he asserts that the ALJ discounted the severity of his fatigue by improperly finding that he was not undergoing any "specific" treatment for his fatigue; concluding that his fatigue complaints were "occasional" rather than "frequent" or "repeated"; and failing to "contemplate" that fatigue resulting from his cancer care continued even after the conclusion of his course of treatment. He also maintains that the ALJ failed to provide a "logical bridge" linking the ALJ's observations of Lincoln's fatigue to the conclusion that Lincoln would be able to perform light work.

Substantial evidence supported the ALJ's decision that light work was appropriate despite Lincoln's reports of "daily fatigue." The ALJ cited evidence indicating Lincoln's fatigue was present but not debilitating. The ALJ noted that Lincoln testified he was able to perform activities of daily living; that a provider found Lincoln's report of fatigue "somewhat non-specific" and recommended that he maintain as active of a lifestyle as possible; and that medical providers' notes from May 2020 and May 2021 indicated Lincoln's energy was at "baseline" or that he had "a little bit of fatigue" but no "significant difficulties." This evidence does not compel a finding that Lincoln's fatigue required greater restrictions in his RFC. Instead, the ALJ's discussion of fatigue connects logically to the ALJ's conclusion to "reduce" Lincoln to light work rather than find Lincoln able to work at a greater level of intensity.

Where we have found an ALJ failed to satisfy the "logical bridge" requirement, the evidence cited by the ALJ had "little or no apparent bearing" on the ALJ's conclusion. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *see also Moy*, 142 F.4th at 554. Because the facts cited by the ALJ logically bear on the degree to which Lincoln's fatigue limited his abilities, we disagree with Lincoln's position that the ALJ failed to create a logical bridge to connect the evidence to his conclusions.

While we recognize the ALJ could have provided more detail concerning his evaluation of Lincoln's testimony, we review the ALJ's discussion of the evidence holistically. *See Zellweger v. Saul*, 984 F.3d 1251, 1252, 1255 (7th Cir. 2021). When viewing the decision in its entirety, it is clear the ALJ considered Lincoln's testimony, negating the need for a reversal on this ground.

We also decline to remand this case based on the ALJ's observation that Lincoln did not receive "specific treatment" for his fatigue, or the ALJ's description of the fatigue reports as "occasional" rather than frequent. The ALJ's conclusion that that Lincoln received only "minimal treatment during the period at issue" is supported by the fact that providers recommended Lincoln maintain a healthy lifestyle to combat fatigue. The ALJ reasonably concluded that such lifestyle recommendations did not constitute "specific" treatment and that the absence of more intensive treatment indicated the fatigue did not warrant a more restrictive RFC. Likewise, characterizing Lincoln's fatigue reports as "occasional" was not patently wrong, particularly given that the ALJ factored into the RFC determination an observation that Lincoln experienced fatigue "daily." *See Hess v. O'Malley*, 92 F.4th 671, 679

(7th Cir. 2024) ("We will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." (internal quotation and citation omitted)).

\* \* \*

Ultimately, this is not a case where the ALJ overlooked entire swaths of evidence or selectively discussed the evidence; the ALJ acknowledged that Lincoln at times used a cane and expressly factored Lincoln's fatigue into the RFC determination. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (ALJs cannot cherry-pick facts while overlooking "entire swaths" of evidence to the contrary); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (ALJs may not "selectively discuss" the record). Instead, Lincoln essentially asks this Court to reweigh the record evidence: favoring evidence of his cane use and elevated fatigue levels, and disfavoring evidence of his normal gait and movements, baseline energy levels, report of "little" fatigue, and engagement in daily activities. Because we are foreclosed from substituting our judgment for the ALJ's when the decision is supported by substantial evidence, *Gedatus*, 994 F.3d at 900, we cannot find Lincoln's arguments warrant reversal.

## B. ALJ's Assessment of Nurse Jackson's Opinion

Lincoln also takes issue with the ALJ's characterization of Nurse Jackson's August 2020 opinion as only "partly persuasive." The ALJ concluded that Nurse Jackson's opinion was "overall not fully supported," was inconsistent with other opinions of record, and seemed "based solely on [Lincoln's] complaints and nothing objective." Lincoln asserts the ALJ erred because Nurse Jackson's opinion was supported by her

treatment notes and was consistent with evidence from other treating sources. Had the ALJ properly analyzed Nurse Jackson's opinion, Lincoln suggests the ALJ would have found Lincoln did require a cane and his symptoms interfered with this ability to perform light work.

"[A]n ALJ must 'evaluate the persuasiveness'" of a medical opinion provided by a medical source "for its 'supportability' and 'consistency.'" *Jones v. Dudek*, 134 F.4th 991, 994 (7th Cir. 2025) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." *Id.* § 404.1520c(c)(2).

Because the ALJ's analysis of consistency and supportability in relation to Nurse Jackson's opinion was adequate, we do not find reversal warranted. The ALJ concluded Nurse Jackson's opinion was "not fully supported" after observing the opinion "seem[ed] to [be] based solely on the claimant's complaints" rather than "objective" evidence. Lincoln's arguments do not show error in this reasoning. To the extent Lincoln argues Nurse Jackson's opinion was in fact supported by objective measures, Lincoln does not explain how the objective measures to which he points bear on his ability to move and work. For instance, he does not explain why Nurse Jackson's treatment notes concerning his PSA level and biopsy result informed Nurse Jackson's conclusions about his need for a cane or ability to sit or stand.

The ALJ also analyzed consistency when observing that Nurse Jackson's opinion was inconsistent with other opinions in the record. While Lincoln urges that inconsistency with state agency opinions should not *alone* be a reason to find less persuasive Nurse Jackson's opinion, the ALJ did not reach its persuasiveness determination on that sole basis. Rather, the ALJ also emphasized that Nurse Jackson's opinion was not supported by objective measures and was issued close in time to the alleged disability onset date.

### III.   CONCLUSION

Because the ALJ provided a "logical bridge" from the evidence to his RFC determination, we AFFIRM.